SEALED
REDACTED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
DEC 0 1 2015
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 1:15-CR- A15 CR 348 SS |
| | ) | |
| | ) | I N F O R M A T I O N |
| | ) | |
| Plaintiff, | ) | [VIO: Willful solicitation |
| | ) | and receipt of illegal |
| | ) | remunerations in Federal |
| | ) | health care program, 42 USC |
| V. | ) | 1320a-7b(b); Engaging in |
| | ) | monetary transaction in |
| | ) | property derived from |
| | ) | specified unlawful activity, |
| GARRY WAYNE CRAIGHEAD, | ) | 18 USC 1957; Demand for |
| | ) | forfeiture, 18 USC |
| | ) | 981(a)(1)(A) and 982(a)(7)] |
| | ) | |
| Defendant. | ) | |

THE UNITED STATES ATTORNEY CHARGES:

COUNT ONE
[42 U.S.C. § 1320a-7b(b)(1)(A)(B)]

1. The Federal Bureau of Prisons (BOP), a component of the Department of Justice, operated prisons and community based facilities that confined prisoners convicted in federal courts. Several BOP prisons were located in the State of Texas. BOP provided work related health care to employees under a Federal health care benefit program administered by the Department of Labor, Office of Workers' Compensation Programs.

1

2. <u>Corpus Christi Army Depot</u> (Army) was a United States Army installation located in Corpus Christi, Texas, that overhauled and repaired helicopters, engines and components. The 3,000 plus civilian employees were provided work related health care under a Federal health care benefit program administered by the Department of Labor, Office of Workers' Compensation Programs.

3. The <u>United States Department of Veterans Affairs</u> (VA) was a department of the United States that administered military veteran benefit systems and operated approximately 1700 health care facilities. VA provided work related health care to employees under a Federal health care benefit program administered by the Department of Labor, Office of Workers' Compensation Programs.

4. The <u>United States Postal Service</u> (Postal) was an independent establishment of the executive branch of the United States government. Postal provided work related health care to employees under a Federal health care benefit program administered by the Department of Labor, Office of Workers' Compensation Programs.

5. The <u>United States Border Patrol</u> (Border Patrol), a component of the Department of Homeland Security, was a law enforcement agency whose mission was to detect and prevent the flow of illegal immigrants and contraband across the

international border. The Border Patrol provided work related health care to employees under a Federal health care benefit program administered by the Department of Labor, Office of Workers' Compensation Programs.

6. The <u>Office of Workers' Compensation Programs</u> (Labor) in the Department of Labor (the Office of Workers' Compensation Programs and the Department of Labor hereafter are referred to collectively as Labor) administered the Federal Employees' Compensation Act which provided workers' compensation benefits to civilian employees of the United States who suffered job related injuries. The benefits included medical and rehabilitation expenses. Federal funds were used to pay doctors, physical therapists, hospitals, pharmacies, suppliers of medical goods, and other enrolled providers. Claims for injured worker health care were initially paid by Labor which then billed the employing federal agency for the cost of benefits provided to the worker plus an administrative fee. Programs administered by Labor that paid medical and rehabilitation expenses under the Federal Employees' Compensation Act were Federal health care benefit programs.

7. <u>Defendant Garry Wayne Craighead</u> was a chiropractor who, between 2008 and the date of the filing of this information, organized and involved himself in health care related entities that derived substantial revenue from Labor's workers'

3

compensation programs. The entities were Union Treatment Centers, LLC, Union Treatment Center clinics in Austin, Killeen, San Antonio, and Corpus Christi, clinics in Dallas and Fort Worth originally named New Help, then marketed as Union Treatment Center, and later marketed as GreenTree Health, Creekside Surgical, PLLC, Creekside Diagnostics, LLC, CCM&D Consulting, LLC, Creekside Practice Management, LLC, a clinic in Weslaco marketed as GreenTree Health, GreenTree Health, and Greentree Health Services, Inc.

8. <u>Union Treatment Centers, LLC</u>, (UTC) was an Austin, Texas, business that operated clinics in Austin, Dallas, Fort Worth, Killeen, San Antonio, and Corpus Christi under the Union Treatment Center name. On May 15, 2008, after Defendant Craighead was excluded from participation in the Texas state workers' compensation system, he transferred ownership of UTC to his father-in-law. Defendant Craighead continued to be involved in UTC operations until December 2013.

9. <u>New Help</u> was the original name of the two clinics located in Dallas and Fort Worth. In October 2011, Defendant Craighead, through a company formed and owned in the name of Craighead's daughter, acquired the New Help clinics. After operating the clinics under the New Help name for a brief time, Craighead re-branded the clinics under the UTC name, then operated the clinics as Greentree Health.

4

10. Creekside Diagnostics, LLC, and Creekside Surgical, PLLC, (hereafter referred to collectively as Creekside and/or the Creekside entities) were companies engaged in the practice of medicine. Texas law prohibited non-physicians from owning, controlling, and profiting from companies that employed physicians in the practice of medicine. The Creekside entities were formed at the direction of Defendant Craighead by the medical doctor director of UTC, who acted as Craighead's proxy. Creekside Surgical hired contract physicians to treat UTC patients and to refer them for surgical consults and procedures. Creekside Diagnostics hired physicians to examine UTC patients who had been referred for testing. Each Creekside company was enrolled with Labor as a provider and operated within the Western District of Texas.

11. CCM&D Consulting, LLC (CCM&D), was Defendant Craighead's marketing/consulting company through which he solicited federal employees to utilize health care providers recommended by Defendant Craighead, referred federal employees to certain health care providers, negotiated patient referral agreements with certain health care providers, and received illegal remuneration payments from the health care providers. CCM&D operated in Austin in the Western District of Texas.

12. Creekside Practice Management, LLC, was a company formed on December 16, 2011 that Defendant Craighead used to

5

take over and perform the functions of CCM&D because of Internal Revenue Service collection actions against CCM&D. Creekside Practice Management, LLC, operated in Austin in the Western District of Texas.

13. <u>GreenTree Health</u> was a company Defendant Craighead utilized to brand and market the Dallas, Fort Worth, and Weslaco clinics and to negotiate patient referral agreements with health care providers after his December 2013 departure from UTC. Greentree Health operated in Austin in the Western District of Texas.

14. <u>Greentree Health Services, Inc</u>. was a company formed by Defendant Craighead on October 29, 2014 that operated in Austin in the Western District of Texas.

15. Defendant Craighead, individually and through CCM&D, Creekside Practice Management, LLC, Greentree Health, and Greentree Health Services, Inc., courted employees of BOP, Army, VA, Postal, Border Patrol, and other federal agencies, their union leaders, and their unions to utilize clinics recommended by him. As a result, the clinics developed and maintained a substantial flow of federal employee patients insured by Labor's health care benefit programs. Defendant Craighead's influence with the clinics empowered him to refer the federally insured employee patients to other health care providers of his

choosing, including surgical clinics, doctor specialists, pharmacies, and hospitals.

16. Defendant Craighead devised a scheme to defraud Labor's health care benefit programs for federal workers by knowingly and willfully soliciting and receiving illegal remuneration from health care providers in return for referring the federally insured worker patients for goods, services, and items that would be paid for by Labor's health care benefit programs in violation of violate Title 42, United States Code, Section 1320a-7b(b)(1), by causing the health care providers to offer and pay the remuneration in violation of Title 42, United States Code, Section 1320a-7b(b)(2), and by causing and aiding and abetting the health care providers to file claims with Labor's health care benefit programs that were false because they resulted from the offer and payment of the remuneration in violation of Title 18, United States Code, Section 287.

17. It was a part of the scheme that Defendant Craighead:

    a. Made illegal remuneration agreements with certain health care providers, including, but not limited to:



(1) ▮▮▮
(2) ▮▮▮
(3) ▮▮▮

(4)

(5)

(6)

(7)

(8)

(9)

(10)



and their owners and operators;

    b. Referred federally insured worker patients to health care providers who paid and agreed to pay the remuneration; and

    c. Solicited and received regular and periodic payments of the remuneration amounting to millions of dollars.

8

18. It was a part of the scheme that the health care providers and their owners and operators:

   a. Agreed to pay illegal remuneration to Defendant Craighead and his companies for patient referrals;

   b. Filed false claims with Labor's health care benefit programs for federally insured worker patients referred by Defendant Craighead because of violations of Title 42, United States Code, Section 1320a-7b(b), and collected payments from Labor; and

   c. Paid portions of the payments collected from Labor to Defendant Craighead and his companies as illegal remuneration in violation of Title 42, United States Code, Section 1320a-7b(b).

19. Beginning in or about the 2008 and continuing until in or about 2015 in the Western District of Texas, Defendant,

GARRY WAYNE CRAIGHEAD,

willfully and knowingly did solicit and receive remuneration, directly and indirectly, overtly an covertly, in the amounts of cash set forth below: (a) in return for referring individuals to persons and entities named in paragraph 17 above for the furnishing and arranging for the furnishing of items and services for which payment could be made in whole and in part under Federal health care programs administered by the Department of Labor, Office of Workers Compensation Programs,

and (b) in return for arranging for and recommending purchasing, leasing, and ordering goods, facilities, services, and items for which payment could be made in whole and in part under Federal health care programs administered by the Department of Labor, Office of Workers Compensation Programs, and the cash payments of remuneration were as follows:

███████████████████████

| Date | Remuneration | Source |
|---|---|---|
| 12/30/10 to 02/21/14 | $3,023,959 | Wires from UTC |
| 08/30/11 to 04/14/14 | $1,906,283 | Wires from CS |
| 01/11/11 to 02/23/12 | $2,512,930 | Checks from UTC, CD, CS |
| 09/06/11 to 10/02/13 | $ 352,802 | Wires from CD |
| 09/03/13 to 11/13/14 | $2,004,000 | Wires from GH |
| 09/03/13 to 01/16/14 | $ 35,000 | Wires from GH |
| 12/20/13 | $ 41,105 | Wire from UTC |
| | $9,876,079 | |

███████████████████████

| Date | Remuneration |
|---|---|
| 11/30/11 | $25,226 |
| 12/27/11 | $18,072 |
| 01/19/12 | $16,615 |
| 02/21/12 | $21,307 |
| 03/09/12 | $ 7,908 |
| 03/20/12 | $10,313 |
| 04/13/12 | $18,059 |
| 05/16/12 | $17,493 |
| 06/13/12 | $18,694 |
| 07/11/12 | $23,492 |
| 08/10/12 | $23,578 |
| 09/12/12 | $31,686 |
| 10/18/12 | $40,236 |
| 11/20/12 | $19,408 |

10

| Date | Remuneration |
|---|---|
| 12/12/12 | $35,033 |
| 01/14/13 | $29,089 |
| 02/14/13 | $43,364 |
| 03/19/13 | $36,362 |
| 04/16/13 | $33,050 |
| 05/17/13 | $42,743 |
| 06/14/13 | $44,794 |
| 07/10/13 | $40,359 |
| 08/15/13 | $42,682 |
| 09/16/13 | $50,979 |
| 10/16/13 | $49,989 |
| 11/15/13 | $47,442 |
| 01/02/14 | $25,576 |
|  | $813,549 |

███████████████████████

| Date | Remuneration |
|---|---|
| 10/17/11 | $ 50,000 |
| 11/15/11 | $ 50,000 |
| 12/15/11 | $ 50,000 |
| 01/16/12 | $ 25,000 |
|  | $175,000 |

███████████████████████

| Date | Remuneration |
|---|---|
| 12/04/08 | $ 25,000 |
| 01/09/09 | $ 25,000 |
| 02/09/09 | $ 25,000 |
| 03/09/09 | $ 25,000 |
| 04/08/09 | $ 25,000 |
| 05/06/09 | $ 25,000 |
| 06/08/09 | $ 25,000 |
| 07/06/09 | $ 25,000 |
| 08/04/09 | $ 25,000 |
| 08/20/09 | $ 10,000 |
| 09/02/09 | $ 15,000 |
| 09/17/09 | $  6,000 |

11

| Date | Amount |
|---|---|
| 11/04/09 | $ 25,000 |
| 11/09/09 | $ 20,000 |
| 12/02/09 | $ 25,000 |
| 12/29/09 | $ 20,000 |
| 01/07/10 | $ 45,000 |
| 01/13/10 | $ 20,000 |
| 01/20/10 | $ 10,000 |
| 02/03/10 | $ 45,000 |
| 02/09/10 | $ 20,000 |
| 02/11/10 | $ 10,000 |
| 03/01/10 | $ 45,000 |
| 03/10/10 | $ 20,000 |
| 04/01/10 | $ 25,000 |
| 04/08/10 | $ 20,000 |
| 04/09/10 | $ 20,000 |
| 04/28/10 | $ 5,000 |
| 05/05/10 | $ 25,000 |
| 05/07/10 | $ 25,000 |
| 05/13/10 | $ 15,000 |
| 06/03/10 | $ 40,000 |
| 06/10/10 | $ 25,000 |
| 07/02/10 | $ 25,000 |
| 07/08/10 | $ 25,000 |
| 07/13/10 | $ 15,000 |
| 08/02/10 | $ 25,000 |
| 08/11/10 | $ 20,000 |
| 08/19/10 | $ 20,000 |
| 09/07/10 | $ 25,000 |
| 09/10/10 | $ 15,000 |
| 09/16/10 | $ 25,000 |
| 10/01/10 | $ 25,000 |
| 10/07/10 | $ 35,000 |
| 10/12/10 | $ 5,000 |
| 11/01/10 | $ 25,000 |
| 11/02/10 | $ 15,000 |
| 11/05/10 | $ 15,000 |
| 12/02/10 | $ 35,000 |
| 02/09/11 | $ 25,000 |
| 03/01/11 | $ 25,000 |
| 03/11/11 | $ 25,000 |
| 03/12/12 | $ 30,000 |

| Date | |
|---|---|
| 04/05/12 | $ 30,000 |
| 05/01/12 | $ 30,000 |
| 05/17/12 | $ 30,000 |
| 06/06/12 | $ 35,000 |
| 06/07/12 | $ 30,000 |
| 07/17/12 | $ 35,000 |
| 08/22/12 | $ 35,000 |
| 09/18/12 | $ 35,000 |
| 10/10/12 | $ 35,000 |
| 10/23/12 | $ 35,000 |
| 11/13/12 | $ 35,000 |
| 12/03/12 | $ 30,000 |
| 12/12/12 | $ 30,000 |
| 01/07/13 | $ 35,000 |
| 01/16/13 | $ 20,000 |
| 01/23/13 | $ 20,000 |
| 02/05/13 | $ 25,000 |
| 02/21/13 | $ 25,000 |
| 03/01/13 | $ 25,000 |
| 03/22/13 | $ 32,500 |
| 04/08/13 | $ 30,000 |
| 05/07/13 | $ 25,000 |
| 05/24/13 | $ 20,000 |
| 06/20/13 | $ 35,000 |
| 08/13/13 | $ 20,000 |
| 08/14/13 | $ 32,500 |
| 08/26/13 | $ 25,000 |
| 09/11/13 | $ 35,000 |
| 09/26/13 | $ 35,000 |
| 10/18/13 | $ 30,000 |
| 11/04/13 | $ 35,000 |
| 12/02/13 | $ 30,000 |
| | $2,176,000 |

[redacted]

| Date | Remuneration |
|---|---|
| 08/31/10 | $ 25,000 |
| 10/04/10 | $ 25,000 |

| Date | Remuneration |
|---|---|
| 11/01/10 | $ 25,000 |
| 12/01/10 | $ 25,000 |
| 01/05/11 | $ 25,000 |
| 02/01/11 | $ 25,000 |
| | $150,000 |



| Date | Remuneration |
|---|---|
| 04/21/11 | $ 94,500 |
| 06/06/11 | $125,000 |
| 06/14/11 | $ 75,000 |
| 06/27/11 | $ 50,000 |
| 07/19/11 | $ 50,000 |
| 08/03/11 | $ 75,000 |
| 08/15/11 | $ 75,000 |
| 08/31/11 | $ 50,000 |
| | $594,500 |

The dates and amounts of remuneration received by Defendant Craighead from this vendor have not yet been determined.

The dates and amounts of remuneration received by Defendant Craighead from this vendor have not yet been determined.



The dates and amounts of remuneration received by Defendant Craighead from this vendor have not yet been determined.



| Date | Remuneration |
|---|---|
| 03/20/15 | $15,000 |
| 04/02/15 | $ 12,000 |
| 04/17/15 | $ 20,099 |
| 04/17/15 | $ 5,132 |
| 04/24/15 | $ 4,235 |
| 04/30/15 | $ 34,021 |
| 05/08/15 | $118,176 |
| 05/14/15 | $ 31,285 |
| 05/21/15 | $ 46,741 |
| 05/28/15 | $ 2,880 |
| 06/05/15 | $ 46,097 |
| 06/12/15 | $ 2,826 |
| 06/18/15 | $ 49,386 |
| 06/25/15 | $ 22,018 |
| 07/02/15 | $ 1,913 |
| 07/09/15 | $ 91,512 |
| 07/16/15 | $178,209 |
| 07/24/15 | $440,048 |
| 07/30/15 | $448,339 |
| 08/11/15 | $ 3,819 |
| 08/17/15 | $118,154 |
| 08/20/15 | $715,763 |
| 09/01/15 | $141,637 |
| 09/08/15 | $300,000 |
| 09/24/15 | $331,252 |
| 10/01/15 | $250,000 |
| 10/01/15 | $250,000 |
| | $3,680,542 |

A violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A)(B).

## COUNT TWO
[18 U.S.C. § 1957]

On or about September 27, 2013, in the Western District of Texas, Defendant,

15

GARRY WAYNE CRAIGHEAD,

knowingly did engage in and attempt to engage in a monetary transaction, that is, the transfer of $73,769.72 from Creekside Practice Management, LLC, to Gracy Title for the purchase of Lot 12, Block A, of Post Oak Estates, Williamson County, Texas, by, through, and to financial institutions, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, willful solicitation and receipt of remuneration for referring individuals for services and items payable under a federal health care benefits program in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A)(B).

A violation of Title 18, United States Code, Section 1957.

### DEMAND FOR FORFEITURE
[42 USC § 1320a-7b(b)(A)(B), 18 USC §§ 24, 1956(c)(7)(F), and 1957, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), by Title 28 U.S.C. § 2461 and 18 U.S.C. § 982(a)(7). Fed. R.Crim. P. 32.2]

### Criminal Forfeiture Statutes

As a result of the foregoing criminal violations set forth in Counts One and Two, which are each punishable by imprisonment for more than one year, Defendant Garry Wayne Craighead shall forfeit to the United States the following property:

Lot 12, Block A, of Post Oak Estates subdivision, Williamson County, Texas, titled in the name Cody Jordan Craighead, an adult child of Defendant; and

Mooney M20J aircraft, serial 24-0358, United States registration N201QZ.

Pursuant to Title 42 U.S.C. § 1320a-7b(b)(A)(B), 18 U.S.C. §§ 24, 1956(c)(7)(F), and 1957, and Title 18 U.S.C. § 981(a)(1)(A), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461, which states the following:

> Title 18 U.S.C. § 981(a)(1): The following property is subject to forfeiture to the United States: (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1957 of this title, or any property traceable to such property.

Pursuant to Title 42 U.S.C. § 1320a-7b(b)(A)(B), 18 U.S.C. § 24 and §982(a)(7), which states the following:

> Title 18 U.S.C. § 982(a)(7): The Court in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

Richard L. Durbin, Jr.
United States Attorney

James Blankinship
Assistant United States Attorney
601 NW Loop 410, 6th Floor
San Antonio, Texas 78216
210/384-7100
jim.blankinshihp@usdoj.gov
State Bar of Texas #02456750